Good morning, Your Honors. May it please the Court, Christy Hughes from Federal Defenders on behalf of Mr. Gonzalez. The District Court should have dismissed the indictment for two reasons. First of all, Mr. Gonzalez's due process rights were violated because he was not removable as charged and because the IJ failed to advise him of his eligibility for 212H relief. I think this Court just went through the first point about not removable as charged. I just wanted to add one point because there were some questions about common sense and why someone might be treated as admitted for purposes going forward even though their temporary resident status has been terminated. And this Court said in Hingsum and Shivaraman that Congress did intend to treat differently those people who come here and attempt to go through lawful channels and adjust their status. And so we are going to treat those people slightly differently than the people who come here and just remain in unlawful status the entire time. Notwithstanding counsel's, in the previous case, the counsel for the government's comments, in this case we don't yet at least have a concession that if there's admission the case is over. And I'd like your comments on what the regulation means when it says that a person is returned to prior unlawful status once their temporary residency is dealt with, done away with. I have two answers, Your Honor. First of all, in the government's brief and below, they didn't contest the initial point, the admission. What they contested, they argued that the termination put him back into the unlawful status. That's my question exactly because that's why I'm starting over with that point. Okay. I just wanted to put forth my argument that I think that is a concession. I'm not sure how it couldn't apply in your case. I assume that the exact same argument we just heard, the exact same issue we just heard argument on is the lead issue in your case, right? Correct. We would presumably have to decide them the same? Correct. I would agree. And so to Your Honor's second point, putting someone back into unlawful status means just that, that they're not here at one point. And so because they're here unlawfully, they are removable. We're not arguing that. It's just that the government has to go through certain procedures to remove them at this point because they have been admitted. And that was what, in fact, the BIA rejected the argument that the government's making in Castro Valdez where DHS had argued, oh, when you terminate someone's temporary resident status, you now put them back into the unlawful status of someone that's never been admitted. And DHS said no. Termination, I'm sorry, the BIA said no and said termination takes away your permission to be here, but it doesn't change the fact that you were admitted. And they went through and looked at the regulation and said there's no support in the regulation for the idea that when your temporary resident status is terminated, you're now in the group of aliens that has never been admitted. That's just not the way that they. Well, what does it mean then to return the alien to the previous unlawful status? What can it mean if it doesn't mean that they are back to the status they had before being admitted? Well, it means that you're in unlawful status in the sense that you have no permission to be here and you're removable. But it doesn't mean that you're in the unlawful status and that you entered without admission or inspection because that has now taken place. When you submitted your application. But initially he entered without inspection, correct? So his initial entry was unlawful. Correct. Okay. So once he reverted to that initial unlawful status, I don't understand what's left for him. Well, because when he was adjusted to temporary resident status, he underwent an admission, which includes an inspection and authorization. And this court has said that we don't construe the term admission narrowly so that it has to take place at the border at a port of entry. It can take place within the country when someone's status is adjusted because they've gone through the inspection process and the Immigration Service has said, yes, you're authorized to be here. That's an admission. And so when you terminate that temporary resident status, he does go back into unlawful status in the sense that he has no permission to be here. But we don't undo the procedure and the fact that has taken place, which is he was admitted by the Immigration Service. But what do you say you're just undoing what? If the only thing that's occurred between the time of the unlawful entry and the termination is the admission, what are you undoing then? What are you undoing if you went from unlawful status to lawful status back to unlawful status? What are you undoing if it's not the admission? What are you undoing? You're undoing that lawful status. So I think there's a difference between admission, which is a procedure or a fact that takes place, and the legal effect of that admission, which is that you have legal permission to be here. So you're undoing the legal permission that you have to be here, which means you now go into – But the fact was he entered without inspection, and that's the thing that he's being charged as removable for. He did enter without inspection. He got a benefit for a while. It was taken away, and now he's back to having been – having entered originally without inspection. I understand Your Honor's point, but I think while he may have initially entered without inspection, he then was inspected by the Immigration Service when he was admissioned, because under the INA, an admission includes inspection and authorization. And so in Rosas-Ramirez, the BIA said someone who entered illegally the first time became admitted once he was adjusted to temporary residence status. The governing regulation not only has the part about termination of the status, returning the person to their unlawful status, it also goes on to say that it renders him amenable to exclusion or deportation. So under 236 or 242. So what is left of that part of the regulation if we read it the way you do? Well, I think that's – at the time that Mr. – I guess that would apply to people who – are you asking about the difference between then the exclusion or the deportation? No. I'm saying that the regulation has two parts. One, half of it says that termination of the temporary residence status returns you to your prior unlawful status. Okay. Then it goes on to say you are also, termination of status, renders you amenable to exclusion or deportation, as may be appropriate. So my question to you is if you say King's X, there's no ability to exclude or deport from the termination, what does that do to that half of the regulation? I see Your Honor's question. He's not – he's amenable to deportation proceedings. So our argument is not that terminating his temporary residence status means you can't deport him. That's not it at all. Doesn't the reference to exclusion also suggest that whatever free-floating idea about admission may exist out there that's not the point of this regulation? I mean, how could you be excluded if you still had been admitted, I guess, is my question. For people that I guess were intercepted or picked up at the border and then later brought into the country and paroled in, I think this would apply, for instance, for people who were admitted and then paroled into the country, that parole is kind of – it's never an admission. And so that person, if the status is then revoked, that person would then be amenable to exclusion proceedings. And earlier in the statute it goes through and talks about certain groups of aliens that are amenable to adjusting a temporary residence status. And because it's so long, I don't know that I'm going to be able to find it right this second, but it talks about, for instance, Haitians that were paroled into the country. So if that person were paroled into the country and then had his temporary residence status terminated, he would then be amenable to exclusion because once the parole is revoked, there's no admission or inspection or anything. But someone who was actually admitted in the country would then be amenable to deportation proceedings, and that's like Mr. Gonzalez. And I can find that while government counsel is arguing. I apologize. Just to clarify, there were two removals in this case? There were. The 1996 removal and the 1998 removal. So if we disregard the 1996 removal, why wasn't the 1998 removal sufficient? Well, the 1998 removal is based on the 96 in the sense that nothing new occurred between 1996 and 1998. Go ahead. The convictions that were alleged were the same. He had those at the time of the 1996. And so had he been properly advised of his ability or of his eligibility for 212H relief through his children at the 1996 deportation, he would have applied to adjust his status and likely gotten status here and then would not have been amenable to those proceedings in 1998 because he would have had status here. And so the 1998 is premised on the 1996. But it isn't the reinstatement of 96. It's an independent proceeding, correct? Correct. But it only took place because he was improperly removed in 1996 in the sense that he wasn't deportable as charged in the sense that he wasn't advised and allowed to apply for relief. So would he have been eligible for relief without a showing of good moral character, or is that a requirement for adjustment through his children? That would have been a requirement. It would have been within the IJ's discretion to grant. In spite of his convictions? Correct. Although if you look at the facts of the conviction which are in the PSR and which he mentions at sentencing, they're not particularly egregious. So I think an IJ exercising discretion could have looked at the fact that Mr. Gonzalez had been here since he was 10 years old. He had two citizen children. He had eight citizen siblings in the country. His parents were here and found that that outweighed his convictions. So when was that issue about the 212H relief raised? When was that issue first raised? Well, that particular argument was not raised before the district court. What was raised was the claim that his due process rights were violated because he wasn't advised of relief, and the relief that was argued below was 212C and not 212H. And the reason that was argued is that the government provided documents and discovery from the INS that said you were granted resident status under the SAW amnesty program, which would have adjusted him into legal permanent resident status, making him eligible for 212C. And so that was the basis for it. So if the 212H argument has been waived, what does that do to your argument regarding the 1998 removal? Well, I don't agree that it's been waived, Your Honor. If it wasn't raised in district court? Well, as we argued in the briefs, it's claims that are waived and not arguments. And so the claim has always been the same. The claim has been his due process rights were violated when he wasn't advised of relief. And once it became clear in the district court that he wasn't eligible for the 212C relief because the government's documents were in error, then the argument now in appeal that we're raising is that he was eligible for 212H relief. That's a completely different form of relief, though, that the district court never had the opportunity to rule on. That's correct, Your Honor. But it's a purely legal question. There's no facts. It's not factually dependent. Counsel, I'd appreciate your answering the initial question, which was if the court disagrees with you and holds that 212H was waived, what effect, if any, does that have on our consideration of the 1998 removal order? Well, the 1996 still would have been fundamentally unfair and could not have been used to support the indictment because, meaning that the 1998 couldn't be premised on it, because he wasn't deportable as charged. So if they would have properly charged him, for instance, they could have charged him on certain criminal grounds. But then the burden would have been on the INS to prove those. That wasn't what happened. Because he was charged on entering without inspection, he had the burden then to demonstrate that he was admissible for this status, et cetera. And so that's the problem with the first due process violation, is the not deportable as charged. If this court finds that he wasn't deportable as charged and sustains the or I guess grants our appeal on that basis, then the deportation was invalid and the 1996, and the indictment should have been dismissed because the 1996 deportation is invalid and the 1998 deportation is invalid because it was premised on the 96. But counsel, didn't, this has a lot of layers of supposition, but didn't he waive the right to appeal the 1996 removal? Well, two responses, Your Honor. One is based on the 212H failure to advise of eligibility. Okay. Disregarding that, if we disagree with you on that issue, didn't he waive the right to challenge the 1996 removal? Well, the IJ goes through and does a mass advisal of the right to appeal, and it's not entirely clear that everyone understands. Didn't he go back individually then and ask this particular defendant if he waived his right to appeal? He does. He does that at the end of the hearing, once his hearing has already taken place. He says, Do you accept that or do you wish to appeal? And Mr. Gonzales says, I accept. But it's not clear based on the group advisal whether or not he actually understood what the IJ, what the right to appeal meant and what the IJ was saying. And so it's not, the government hasn't demonstrated or hasn't met their burden that that's a valid waiver of appeal such that he waived his right to appeal. He was asked, it wasn't just that very last question. He was asked specifically whether he understood the rights that had been explained one by one to the group, and he said yes. And then he was asked whether he wanted time to get a lawyer, and he said no. So it isn't just the very end. There was individual questioning about him, including his convictions for car theft and assault. There was a colloquy with him individually. Correct, Your Honor. I didn't mean to be misleading. The part about the appeal and whether or not he wants to waive it only comes at the very end. Okay. And his question about you understand the rights that I explained to you and Mr. Gonzales says yes, it's clear from what took place earlier in the hearing that not everyone was actually clear on those rights that were being explained. And so just because Mr. Gonzales says yes, I don't think that demonstrates it considered an intelligent waiver because as he's going through, the IJ says, do you want to get an attorney, raise your hand. No one raises their hand. Then he says it again, everyone raises their hand. And so it's not clear that everyone at that proceeding, including Mr. Gonzales, understands the rights that are being explained. Counsel, you've exceeded your time by a lot. Nonetheless, you can have about half a minute for rebuttal on this. Thank you, Your Honor. May it please the Court, Benjamin Hawley for the United States. Do you make the same concession? You guys talked, I assume, before the argument? We did not actually. However, based on my understanding of the two cases, I would agree the Court would presumably decide them the same, based on my understanding of the facts. I don't see these cases as the same. There are elements in this case that were not present in the other case, including a waiver of the right to appeal, including two separate removals. So I don't really see these as being the same case. Certainly. And when I say the same, I mean in reference to the 1996 deportation, if this Court were to hold that that's the one that matters. The 1998 deportation, however, I believe does solve any problems that might have been present in the 1996 hearing, and that's because it's an entirely independent and separate proceeding. In fact, the grounds for deportation in 96 and 98 were different. In 1996, it was based purely on you entered without inspection in 1979, whereas the 98 deportation says not only have you entered without inspection, you have these various criminal offenses, the vehicle theft and the assault with a deadly weapon, and therefore are deportable on that ground. Just procedurally, was the 1998 removal challenged? At the district court level, no. Not at all, in fact, until we come to this level. In fact, the 1998 deportation is the one that formed the basis for the conviction at the stipulated bench trial here. So even though all of the litigation below was about 1996, the one that actually matters for a conviction is 1998. So if the defendant is not able to successfully challenge the 1996 removal, then he's out in terms of relief. Yes, that's certainly the government's position. And the flip side of that as well, that even if the 96 deportation he were able to successfully challenge, that would not thereby invalidate the conviction based on the 1998 deportation proceedings. In terms of if the court is interested in going back to this reversion issue with the CFR, here the defendant's initial entry was unlawful. So from 1979 until 1988, he was in the United States unlawfully. It's that status, it's that fact that he reverted back to as of July 8th of 1994 when INS terminated his legal status. That's exactly what then led to the deportation proceedings in 1996, and that's what the court went over, the immigration judge went over with the defendant. The immigration judge specifically, after talking with Mr. Gonzalez and with the government attorney, said, well, now because of your convictions, because you were terminated, you're now back in the same position you were in 1979. That is here unlawfully. I'm sorry to interrupt you, but I was hoping I had the document in front of me, but you were saying that the 1998 removal order, there was more than just the A6AI ground charged as a basis for removal? That's on the record at page 138. They reference convictions that 1996 doesn't. So what was the other statutory basis alleged? The statutory basis was 212A6A1 and 212A2A2. Go ahead. In terms of this waiver of counsel or appeal that counsel mentioned here, the cases cited by Mr. Gonzalez in the brief all involve situations where the immigration judge only gave a mass advisal only and never followed up with an individual colloquy. Those cases, in fact, specifically distinguish situations where an IJ then follows up on an individual basis. That's exactly what happened here. The record at page 96 and 98 both involve situations where the IJ is following up, asking Mr. Gonzalez himself in particular, do you understand what we've been doing so far? Do you still want to proceed on your own? The answer is yes. And then at the end, having heard everything, do you want to challenge this? Do you want to appeal or do you accept the decision? He says I accept. That's all that's required by this court's prior case law, and that's exactly what the IJ did in this scenario. So unless the court has any other questions, I would submit. Thank you. You may do that. I have three quick points, Your Honors. The part of the regulation that I was talking about that talks about parole that would explain the difference between exclusion and deportation is 245B6, and it says an alien who establishes that he or she was paroled in the United States and whose parole status was terminated, and it goes on from there. So someone who was paroled rather than inspected, admitted, and authorized would be subject to exclusion instead of deportation proceedings. Second of all, the 1998 deportation was challenged below. At ER 113 is the motion to dismiss where the 1998 deportation is challenged, and then again at the stipulated facts bench trial at ER 59, counsel again says we're challenging the constitutionality of both of these deportations, and the district court says that's understood. Is there, in fact, a second statutory ground, though, alleged in the 1998 order? Yes, Your Honor. It's that he's present without being admitted or paroled, so it's the exact same problem. The A2 ground is not that. That's the A6. Oh, I'm sorry. The A6 is without being admitted or paroled. The A2 is the moral turpitude grounds, but that ground of inadmissibility would have been waived at the 1996 deportation if the IJ, as this court said in Arrieta, had advised him of 212H relief based on his citizen children. Those crimes would have been waived essentially because he would have already gotten a waiver of those criminal grounds because those weren't committed in between 1996 and 1998. Yeah, but I guess I'm not following. Why would it have been waived? So he could have gotten a 212H waiver of inadmissibility based on those two criminal grounds and then been eligible to potentially adjust his ---- That's speculative, but that's a whole chain of speculation after speculation that that could have happened. I understand that, Your Honor. My point is just that those aren't new criminal convictions, and so had he gotten the 212H waiver, those would have essentially been off the table in 1998. Okay. Follow you. Thank you, Your Honors. Thank you. We appreciate the arguments of both counsel. The case just argued is submitted.
judges: Graber, Rawlinson, Watford